# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **GAIL JOBE** | **CIVIL ACTION NO. 04-2166** |
| **VS.** | |
| **JO ANNE BARNHART, Commissioner**<br>**Social Security Administration** | **MAGISTRATE JUDGE METHVIN**<br>**BY CONSENT OF THE PARTIES** |

## MEMORANDUM RULING

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the court concludes that there is no substantial evidence to support the ALJ's finding that Jobe is not disabled. Accordingly, the Commissioner's decision is **REVERSED** and the case is **REMANDED**.

### *Background*

Born on June 16, 1956, Gail Jobe ("Jobe") is currently 49 years old. She graduated from high school and attended one semester of college.[1] She worked in the past as a service desk manager for a retail store. On March 16, 2001, Jobe applied for supplemental security income and disability insurance benefits, alleging disability since January 31, 1999 due to chest, knee and back pain, shortness of breath, dizziness and blurred vision.[2] Jobe's application was denied on initial review, and an administrative hearing was held on July 11, 2002.[3] In an opinion dated July 19, 2002, the ALJ denied benefits on grounds that Jobe can perform the full range of

---

[1] Tr. 33.

[2] Tr. 82, 97, 187-180.

[3] Tr. 28-63.

sedentary work and, applying the Medical Vocational Guidelines, she is not disabled.[4] The Appeals Council denied review and Jobe timely filed this appeal.

## *Assignment of Errors*

Jobe alleges that the ALJ erred in failing to properly evaluate her obesity, resulting in findings at Steps 3-5 that are unsupported by the evidence.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

---

[4] Tr. 12-18.

## *ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined that Jobe suffers from the following severe impairments: lower back pain, arthritic changes to her left foot, and obesity.[5] The ALJ found that Jobe retained the residual functional capacity to perform the full range of sedentary work. At Step 5, relying on the Medical Vocational Guidelines (the "Grids"), the ALJ found that there were jobs existing in significant numbers which Jobe could perform, and therefore she was not disabled. After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. § 405(g), the undersigned concludes that the ALJ's findings and conclusions are not supported by substantial evidence in the record.

---

[5] Tr. 18.

*Findings and Conclusions*

*Medical History*

Jobe is 5'8 inches tall and weighs 384 pounds.[6] All examining physicians have considered Jobe "obese."

From 1991 through 1999, Jobe was treated by Dr. Kenneth Futch, a cardiovascular specialist for chest pain.[7] The records do not reflect a definitive diagnosis and the records from 1999 indicate that the treatment was mostly for headaches, back pain, and an earache.[8]

On January 30, 2001, Jobe was examined by Dr. John Humphries, an orthopaedic surgeon.[9] Jobe reported being in an automobile accident, and injuring her head and left ankle. Jobe was able to walk without external support devices. She did not walk independently on the left heel or toes because of pain. When her left ankle was manipulated, she reported pain. X-rays showed arthritic changes with spur formation. Jobe's lumbar mobility was moderately limited but with no associated pain. Jobe had difficulty getting on and off of the examining table. Jobe's size precluded the doctor from having her assume the supine position for examination. Jobe also complained of headaches. On February 13, 2001, Jobe reported that her left foot and ankle were better and she was able to walk on her heels and toes bilaterally.[10] In March, 2001, Jobe complained of right knee pain and left hand numbness. Dr. Humphries

---

[6] Tr. 31, 158, 163.

[7] Tr. 129-146.

[8] Tr. 129.

[9] Tr. 157-159.

[10] Tr. 156.

prescribed Vioxx for relief of Jobe's pain.[11] In April, Jobe was told to try to go without Vioxx to see if she could manage without medication.[12] In June, 2001, Jobe reported that the pain returned when she stopped taking Vioxx. By July 23, 2001, Jobe was better and did not need to take Vioxx on a regular basis.

On July 19, 2001, at the request of Disability Determination Services, Jobe was examined by Dr. Kenneth Ritter, Jr., an internist.[13] Jobe had pitting edema in her ankle areas. Range of motion was normal. Dr. Ritter noted that "[a]mbulation was normal for her weight."[14] Chest x-ray and EKG were normal. Dr. Ritter concluded that Jobe had hypertension, "significant obesity," chest pain that was muscular-skeletal and positional, chronic low back and leg pain, and chronic headaches. Dr. Ritter completed a Medical Assessment of Ability To Do Work-Related Activities indicating that because of her obesity, Jobe had the following limitations: she could occasionally lift 25-35 pounds, frequently lift 10-25 pounds, stand/walk 4-5 hours in a 8-hour workday, and rarely climb, kneel, crouch, or crawl, and never stoop.[15]

On August 22, 2001, a DDS non-examining physician completed a Residual Physical Functional Capacity Assessment indicating that Jobe is able to perform a wide range of light work.[16]

---

[11] Tr. 155.

[12] Tr. 154.

[13] Tr. 161-167.

[14] Tr. 163.

[15] Tr. 166-167.

[16] Tr. 169-176.

*Administrative Hearing*

Jobe testified that she is 5 feet 8 inches and weighs 384 pounds.[17] She no longer drives. Jobe described problems with standing or sitting for long periods of time. She experiences backaches after 10 minutes of standing. She can sit for two hours, but she has to elevate her legs and change positions often.[18] She has to sit to wash dishes and fold clothes, she is unable to grocery shop because she cannot stand for that long, she does not do laundry, and she cannot get in and out of a tub or shower.[19] She spends most of her day reading. Jobe's daughter, April Theriot, testified that she lives with her mother, drives her where she needs to go, and has to do almost all of the housework.[20]

*Residual functional capacity and non-disability finding*

There is no Listing for obesity under the regulations, but obesity must be considered as a factor in evaluating the requirements of the Listings. Here, Jobe contends that the ALJ erred at Step 3 in failing to find that her obesity, in combination with her other impairments, equals the requirement of the "major joint dysfunction" Listings at 20 C.F.R. Pt. 404, Subpt. P, App. 1, Subpart P, § 1.02A because her obesity prevents her from ambulating effectively. Listing 1.02 provides in pertinent part as follows:

---

[17] Tr. 31.

[18] Tr. 36-38.

[19] Tr. 42-43, 51.

[20] Tr. 58-60.

**1.02 Major dysfunction of a joint(s) (due to any cause**): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), *resulting in inability to ambulate effectively*, as defined in 1.00B2b . . .

The ability to ambulate effectively is defined in 1.00B2b as:

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities...

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 CFR Pt. 404, Subpt. P, App. 1.

Social Security Ruling (SSR) 02-01p addresses how obesity is to be factored in determining whether an individual is disabled.[21] SSR 02-01p explicitly states that obesity **"may substitute for the major dysfunction of a joint"** required in Listing 1.02:

  Step 3, The Listings

  **7. How do we evaluate obesity at step 3 of sequential evaluation, the listings?**

Obesity may be a factor in both "meets" and "equals" determinations. Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

\* \* \*

We may also find that obesity, by itself, is medically equivalent to a listed impairment (or, in the case of a child applying under title XVI, also functionally equivalent to the listings). *For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause* (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence.

\* \* \*

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.

---

[21] Social Security Ruling (SSR) 02-01p (2002) updated the previous Social Security Rulings, including SSR 00-3p, concerning obesity. Jobe argues that the ALJ improperly relied on Social Security Ruling, 00-3p in considering her obesity. However, a review of the decision shows that the ALJ did not reference SSR 00-3p or any other Social Security Ruling. Moreover, Jobe does not explain how the purported error in relying on SSR 00-3p prejudiced her. The remaining allegations of error are intertwined with her contention that her obesity and hernia impairments render her disabled.

\* \* \*

> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

The record shows that Jobe is 5'8" tall and weighs 384 pounds. She testified that she cannot walk for long distances, she has difficulty climbing steps to get into her home, and no longer grocery shops. The ALJ concluded that Jobe did not meet the requirements of Listing 1.02 because Jobe's ambulation was "normal for her weight":

> The medical evidence reveals some difficulties with ambulation, but Dr. Ritter, who performed a consultative examination in July 2001, has specifically noted Ms. Jobe's ambulation to be normal for her weight. There is no objective evidence of record to suggest otherwise, and the undersigned concludes the claimant has no impairment which meets or equals the requirements of listing 1.02 or any other listed impairment.[22]

Unfortunately, there is no explanation of what Dr. Ritter meant when he said Jobe's ambulation was "normal for her weight." An individual of Jobe's size may normally walk with great difficulty or at least have a significantly more limited ambulation than someone of normal weight. Thus, it is unclear what "normal for her weight" means. Further, since normal ambulation for a severely obese person is not defined by the doctor, there is no evidence that this information contradicts Jobe's testimony that she is unable to drive, walk distances, grocery shop, or climb into a tub. At the least, the ALJ should have re-contacted Dr. Ritter to determine specifically what he meant by "normal ambulation for her weight." Additionally, the ALJ should have called a medical expert to testify regarding whether Jobe's testimony regarding the

---

[22] Tr. 18.

limitations on her mobility qualifies as "ambulating effectively" under the definition set forth in Listing 1.00B2b. Thus, the undersigned finds that the ALJ erred in relying on an ambiguous statement by a physician in determining whether Jobe impairments equal the requirements of Listing 1.02.

Moreover, the ALJ's residual functional capacity does not contain all of the limitations posed by Jobe's impairments. The ALJ concluded that Jobe retained the residual functional capacity to lift and carry ten pounds occasionally, stand two hours and sit six hours in a workday, and therefore she had the capacity to perform the full range of sedentary work. Although the ALJ gave Dr. Ritter's opinion considerable weight, the ALJ failed to address Dr. Ritter's opinion that due to her obesity, Jobe can rarely climb, kneel, crouch, or crawl, and never stoop.[23] The ALJ's residual functional capacity assessment does not include any postural limitations for Jobe, despite the fact that she is severely obese and the postural limitations as identified by Dr. Ritter are not contradicted by the record. Accordingly, the ALJ's residual functional capacity assessment is incomplete.

Finally, the undersigned concludes that the ALJ's application of the Medical-Vocational Guidelines was in error. The Medical-Vocational Guidelines were established to allow the ALJ take administrative notice of the existence of jobs in the national economy when a claimant's residual functional capacity, age, education and previous work experience meet certain specified criteria. When the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual

---

[23] Tr. 166-167.

functional capacity, the ALJ may rely exclusively on the guidelines in determining whether there is other work available that the claimant can perform. Fraga v. Bowen, 810 F.2d 1296 (5th Cir. 1987); see also Fields v. Bowen, 805 F.2d 1168 (5th Cir.1986); Dellolio v. Heckler, 705 F.2d 123, 127-28 (5th Cir.1983). However, when non-exertional limitations are shown, a disability decision cannot be made solely on the basis of the vocational guidelines. Martin v. Heckler, 748 F.2d 1027 (5th Cir.1984). In that case, "[T]he ALJ must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist." Fraga v. Bowen, supra; Scott v. Shalala, 30 F.3d 33 (5th Cir. 1994); Lawler v. Heckler, 761 F.2d 195, 198 (5th Cir.1985).

Jobe is severely obese, has difficulty moving due to her obesity, no longer shops, has hypertension and arthritic pain, is unable to perform normal daily activities, and has limitations on climbing, kneeling, crouching, crawling, and stooping. By using the Guidelines, the ALJ failed to properly assess the entirety of Jobe's situation and whether, considering her obesity, pain, and postural limitations, she would be able to obtain and maintain employment.[24] Instead of the Guidelines, the testimony of a vocational expert was necessary to determine whether Jobe

---

[24] In order to be capable of engaging in substantial gainful activity, a person must have a realistic chance of both obtaining as well as holding a job in a *realistic* work setting:

> In [Wingo v. Bowen, 852 F.2d 827 (5th Cir.1988)], this Court held that a determination that a person is capable of engaging in substantial gainful activity depends on a finding not only that the individual has some chance of being hired, but also, that, taking account of the individual's exertional and non-exertional limitations, the individual has a reasonable chance, 'once hired, of keeping the job.' Id. at 831. We noted that '[a] claimant capable of performing sedentary or light work under the guidelines must have the ability to perform the required physical acts day in and day out in the sometimes competitive and stressful conditions in which all people work in the real world.' Id. (citing Allred v. Heckler, 729 F.2d 529, 533 (8th Cir.1984)).

was capable of performing sedentary work under the guidelines in a real rather than a theoretical sense

For the foregoing reasons, the undersigned finds no substantial evidence in the record supporting the ALJ's conclusion that Jobe can perform sedentary work.[25]  The ALJ should have had obtained further information from Dr. Ritter or another physician to determine Jobe's specific limitations with respect to ambulation and he should have consulted a medical expert to determine whether Jobe's obesity, either alone or in combination with her other conditions, meets or equals a listed impairment.  Further, the ALJ erred in failing to consult a vocational expert to determine whether the limitations occasioned by Jobe's obesity affect her ability to perform work in the regional and/or national economy.   Remand is appropriate upon a showing of "good cause," which includes an "inability to make a definitive ruling concerning a claimant's disability based on the record before the court." Ferguson v. Schweiker, 641 F.2d 243, 250, n. 8 (5th Cir.1981).  Considering that the record does not contain information regarding Dr. Ritter's finding of normal ambulation, nor does it include vocational expert testimony concerning the availability of jobs for an individual with limitations similar to Jobe, remand is appropriate.

*Conclusion*

Considering the foregoing, the decision of the ALJ is **REVERSED** and the case is **REMANDED** for further proceedings in accordance with these findings.

---

[25] The undersigned notes that the Commissioner argues that the fact that no physician has stated that Jobe is disabled supports the ALJ's decision.  Rec. Doc. 13 at p. 3, *citing* Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995); Harper v. Sullivan, 887 F.2d 92, 97 (5th Cir. 1989).  It is noted that the Harper states that substantial evidence supported the ALJ's determination that the claimant's subjective symptomology was not credible because no physician stated the claimant was disabled.  The issue presented in the case at bar is not limited to plaintiff's credibility, but also involves the completeness of the record regarding the objective findings of medical sources, as well as, the inappropriate use of the Guidelines.

Signed at Lafayette, Louisiana on October 20, 2005.

_____
Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)